UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNIQUE PRODUCT SOLUTIONS, LTD., ) | Case No. 5:10-CV-1912 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| HY-GRADE VALVE, INC., ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant Hy-Grade Valve's Motion to Dismiss Plaintiff Unique Product Solutions' Complaint on the ground that the *qui tam* provision of 35 U.S.C. §292(b) is unconstitutional. (**Doc #: 12**.) For the reasons discussed, *infra*, Defendant's Motion is **GRANTED**.

**I.**

On August 27, 2010, Plaintiff, pursuant to 35 U.S.C. §292(b), filed the instant Complaint as a *qui tam* relator. (Doc #: 1.) Plaintiff alleges that Defendant violated 35 U.S.C. §292(a) by both marking a series of industrial valve products with United States Patent No. 4,605,041 (the "'041 Patent"), and using the '041 patent in advertising, even though the '041 patent expired on April 5, 2005. (*Id*.)

Defendant initially moved to dismiss Plaintiff's complaint on October 26, 2010, under Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule

12(b)(6) for failure to state a claim upon which relief can be granted.[1] (Doc #: 6.) On November 15, 2010, a teleconference was held during which the Court granted Plaintiff leave to conduct limited discovery on the issue of personal jurisdiction; additionally, the Court solicited briefing on the constitutionality of the *qui tam* provision of 35 U.S.C. §292(b) and ordered that the United States Department of Justice be served the order creating the briefing schedule for the constitutional challenge.[2] (Doc #: 9.)

Pursuant to the Court's solicitation, Defendant filed the instant Motion to Dismiss on January 13, 2011, arguing that 35 U.S.C. §292(b) violates the Appointments and Take Care Clauses of the United States Constitution. On February 11, 2011, Plaintiff filed its response in opposition. (Doc #: 15.)

**II.**

---

[1] The merits of Defendant's initial motion to dismiss are not addressed in this order.

[2] The order was issued on November 16, 2010, and served upon John Fargo, Director of the Commercial Litigation Branch of the Department of Justice, Civil Division. In addition to serving the order upon Mr. Fargo, the Court contacted Mr. Fargo and invited a response to the constitutionality issue. Mr. Fargo orally expressed an intention to intervene. As of the date of this order, the Department of Justice has not filed a response to Defendant's Motion to Dismiss nor has it moved to intervene in this action. Under Federal Rule of Civil Procedure 5.1, the attorney general may intervene within 60 days after a party files notice of a motion raising a constitutional issue or after the court has certified a constitutional challenge, whichever is earlier, unless the Court sets a later time. The Court certified the constitutional challenge on November 16, 2010, when it issued its order setting a briefing schedule for the constitutionality issue and served the order on the Department of Justice. The Court set a deadline of February 7, 2011, to respond to Defendant's constitutionality brief; the deadline was later extended to February 11, 2011. The February 11, 2011 briefing deadline was later than sixty days after the November 16, 2010 certification of the constitutional challenge, and therefore represented the deadline for the government to intervene under Federal Rule of Civil Procedure 5.1. The Court thus provided the government the necessary time to respond to Defendant's constitutional challenge under the Federal Rules.

Under 35 U.S.C. §292 (the "False Marking Statute"),[3] it is unlawful to mark a product with, or use in advertising, a patent number in connection with products that are not patented. 35 U.S.C. §292(a). The penalty for violating the statute is a fine of "not more than $500 for every such offense." *Id.* "[D]espite being punishable only with a civil fine," "the false marking statute is a criminal one." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010) (citing S.Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952)).

The False Marking Statute contains a *qui tam* provision, whereby "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. §292(b).[4] Defendant argues that this *qui tam* provision

---

[3]35 U.S.C. §292 reads:

(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word "patent" or any word or number importing the same is patented, for the purpose of deceiving the public; or Whoever marks upon, or affixes to, or uses in advertising in connection with any article the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public - Shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

[4]The Court notes that while the *qui tam* provision of the False Marking Statute was enacted in 1952, a recent decision by the United States Court of Appeals for the Federal Circuit making *qui tam* actions more financially lucrative for relators has caused a dramatic increase in the number of actions filed. *See Julian B. Slevin Co. v. Bartgis Bros. Co.*, 142 F.Supp. 688, 690 (D. Md. 1956) ("In 1952 the new patent law was adopted, including the false marking section, 35 U.S.C.A. 292, which now provides ..."). Specifically, in *Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1301-1303 (Fed. Cir. 2009), the Court of Appeals for the Federal Circuit held that violators of the False Marking Statute face a $500 fine for *each* article improperly marked rather

violates the Appointments and Take Care Clauses of Article II of the United States Constitution by failing to give the Executive Branch sufficient control over the litigation.

"In a qui tam case, the defendant has [allegedly] committed a violation of the law that causes harm to the government, and the government shares [any] recovery with the plaintiff -an uninjured third party." *SKF USA, Inc. v. U.S. Customs and Border Protection*, 556 F.3d 1337, 1379 (Fed. Cir. 2009). "*Qui tam* actions appear to have originated [in England] around the end of the 13th century, when private individuals who had suffered injury began bringing actions in the royal courts on both their own and the Crown's behalf." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) (citation omitted). "*Qui tam* actions appear to have been as prevalent in America as in England, at least in the period immediately before and after the framing of the Constitution. *Id*. at 776. "Although there is no evidence that the Colonies allowed common-law *qui tam* actions ... they did pass several informer statutes expressly authorizing *qui tam* suits." *Id*. "Moreover, ... the First Congress enacted a considerable number of informer statutes" and "passed one statute allowing injured parties to sue for damages on both their own and the United States' behalf." *Id*. at n.5 (citing to Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124-125).

In *Vermont Agency of Natural Resources*, during which the Court considered whether a *qui tam* relator had standing under Article III of the Constitution to bring an action

---

than simply a $500 fine for a decision to improperly mark multiple articles. The Federal Circuit noted that its interpretation of the statute allows for "'a new cottage industry' of false marking litigation by plaintiffs who have not suffered any direct harm" but that "[r]ather than discourage such activities, the false marking statute explicitly permits" *qui tam* actions for this purpose. *Id*. at 303. As an illustration of the impact of the *Forest Group* decision, this Court's search of the Northern District of Ohio docket indicates that Plaintiff alone filed 31 False Marking *qui tam* actions in 2010.

under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, the Supreme Court deemed the history of *qui tam* actions "conclusive with respect to the question ... of whether qui tam actions were 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Id.* at 777-778 (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998)). As "the assignee of a claim has standing to assert the injury in fact suffered by the assignor" and *qui tam* statutes "can reasonably be regarded as effecting a partial assignment of the Government's damages claim," the Court found "no room for doubt that a qui tam relator" has standing under Article III to bring suit in federal court on behalf of the United States. *Id.* at 773, 778.

The Supreme Court in *Vermont Agency of Natural Resources* explicitly declined to address whether *qui tam* suits violate the Appointments and/or Take Care Clauses of Article II. *Id.* at 778, n.8 ("In so concluding, we express no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the "take Care" Clause of § 3 ... [because] Petitioner does not challenge the qui tam mechanism under either of these provisions, nor is the validity of qui tam suits under those provisions a jurisdictional issue that we must resolve here."). Similarly, the Federal Circuit has yet to weigh in on this issue, though pending before it is *United States ex rel. FLFMC , LLC v. Wham-O, Inc.* (Case No. 2011-1067), in which one of the questions preserved for appeal is whether the False Marking statute violates the Take Care Clause. *See United States ex rel. FLFMC v. Wham-O, Inc.*, No. 2:10cv00435, 2010 WL 3156162 (W.D. Pa. Aug. 3, 2010) (dismissing action for lack of standing under Article III because plaintiff had not "suffered any concrete injury-in-fact, and the government cannot assign its 'sovereign injury' to a private plaintiff," without reaching Article II issue).

The Take Care Clause of Article II of the Constitution provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, §3. The Appointments Clause states that the Executive "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." *Id.* at §2. Defendant argues that the *qui tam* provision of the False Marking statute is unconstitutional under both of these Clauses of the Constitution because, under the standard set forth by the Supreme Court in *Morrison v. Olson*, 487 U.S. 654 (1988), the Executive Branch lacks sufficient control over litigation in which the United States is the real party in interest.

In *Morrison*, the Supreme Court examined the constitutionality of the Ethics in Government Act of 1978 ("EGA"), which allows Congress to appoint an independent counsel to "investigate and, if appropriate, prosecute certain high-ranking Government officials for violations of federal criminal laws." *Id.* at 660. The EGA grants independent counsel the power to conduct grand jury proceedings and other investigations, participate in civil and criminal court proceedings and litigation, and appeal any decision in which the independent counsel participated in an official capacity. *Id.* at 662 (citing 28 U.S.C. §§594(a)(1)-(3)). The Supreme Court held that the EGA does not violate the Appointments Clause of Article II because the independent counsel is an "inferior officer" rather than a principal officer, and therefore is not required to be approved by the Senate. *Id.* at 670-673. Additionally, the Supreme Court held that the plain language of the Appointments Clause does not prohibit inter-branch appointments, enabling Congress to appoint independent counsel, even though independent counsel is an officer of the Executive Branch. *Id.* at 673-677.

The *Morrison* opinion did not specifically address the Take Care Clause. However, the Supreme Court considered whether the EGA violates the constitutional principle of separation of powers by "restricting the Attorney General's power to remove independent counsel to only those instances in which he can show 'good cause'" and by "reducing the President's ability to control the prosecutorial powers wielded by the independent counsel." *Id.* at 686. With regard to the power to remove independent counsel, the Court "[did] not see how the President's need to control the exercise of [independent counsel's] discretion is so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President." *Id.* at 691-692.

Similarly, the Court found that reducing the President's ability to control prosecutorial powers does not "violate the principle of separation of powers by unduly interfering with the role of the Executive Branch." *Id.* at 693. Specifically, the Court highlighted four features of the EGA which "give the Executive Branch sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties": (1) the Attorney General retains the power to remove independent counsel for good cause; (2) independent counsel is only appointed upon specific request of the Attorney General and the Attorney General's decision not to appoint independent counsel is not reviewable; (3) independent counsel's jurisdiction is defined by the facts submitted by the Attorney General; and (4) independent counsel must abide by Department of Justice policies, whenever possible. *Id.* at 696.

The Sixth Circuit Court of Appeals has relied upon *Morrison* to uphold the *qui tam* provisions of the False Claim Act ("FCA"), 31 U.S.C. §3730. *United States ex rel.*

*Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032 (6th Cir. 1994). Though the Supreme Court in *Morrison* never specifically mentioned the Take Care Clause, the Sixth Circuit applied the separation of powers analysis to the Take Care Clause. Concluding that the *qui tam* provisions of the FCA "have been crafted with particular care to maintain the primacy of the Executive Branch in prosecuting false-claims actions," the Court noted the FCA allows the government to: (1) require the relator to inform it of developments and to send copies of relevant litigation materials, even if the government has decided against intervening; (2) intervene even after first refusing to intervene, upon showing of good cause; (3) move to restrict the role of the relator in litigation; and (4) move to seal the relator's filings for more than sixty days. *Id.* at 1041. Therefore, pursuant to *Morrison* and the Take Care Clause, "the Executive Branch retains 'sufficient control' over the relator's conduct to 'ensure that the President is able to perform his constitutionally assigned dut[y]' ... to take Care that the Laws be faithfully executed.'" *Id.* (citing to *Morrison*, 487 U.S. at 696 and U.S. Const. art. II, §3.) The Sixth Circuit further held that the *qui tam* provisions do not violate the Appointment Clause as "the relator is not vested with governmental power," "the relator's position is without tenure, duration, continuing emolument, or continuous duties" and therefore "is not an officer within the meaning of the Appointments Clause." *Id.* (citing *Auffmordt v. Heden*, 137 U.S. 310, 327 (1890) (internal quotation omitted)).

**III.**

Notwithstanding the Sixth Circuit's reliance upon *Morrison* in finding the FCA *qui tam* provision constitutional, Plaintiff urges the Court instead to follow *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749 (5th Cir. 2001) and *Pequignot v. Solo Cup Co.*, 640 F.Supp.2d

714 (E.D. Va. 2009),[5] two cases upholding *qui tam* provisions while rejecting the *Morrison* "sufficient control" analysis. In *Riley*, the Fifth Circuit, en banc, found *Morrison* inapplicable to the FCA *qui tam* provision because: (1) the FCA authorizes the relator to bring a lawsuit *in the name of* the United States while the statute at issue in *Morrison* (the EGA) assigned the independent counsel *to act as* the United States itself; and (2) FCA *qui tam* relators pursue civil actions while the EGA provides independent counsel the authority to undertake criminal prosecution. *Riley*, 252 F.3d at 754-756 (emphasis added).

The district court in *Pequignot* partially applied the reasoning used in *Riley* to hold that the *qui tam* provision of the False Marking Statute, §292(b), is constitutional based upon: (1) the history of *qui tam* statutes in the United States; (2) the False Marking Statute being civil rather than criminal (citing *Riley* and rejecting *Morrison*); (3) the government's ability to intervene as of right or upon the court's permission under Rule 24 of the Federal Rules of Civil Procedure, partially facilitated by the requirement under 35 U.S.C. §290 that the clerks of federal courts notify the government of any patent suits within one month of filing; and (4) the government actually intervening in *Pequignot* without expressing any objection to the plaintiff's prosecution of the suit. *Pequignot*, 640 F. Supp.2d at 726-728.

While the *Pequignot* district court's order on the constitutionality of the False Marking Statute *qui tam* provision has not been appealed, the Federal Circuit has heard an appeal

---

[5]As discussed, *infra*, the Federal Circuit heard an appeal of a separate summary judgment ruling made by the *Pequignot* district court on the issues of plaintiff standing and government intervention, which were unrelated to the district court's opinion on the constitutionality of the *qui tam* provision. *See Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. 2010). References made to the *Pequignot* district court relate to the order on the constitutionality of the qui tam provision; references made to the *Pequignot* Federal Circuit appeal relate to the appeal of the standing and intervention issues.

of a separate decision made by the same district court. Determining that the mental state required for liability under the False Marking Statute is purposeful deceit rather than simply knowledge that a marking is false, the Federal Circuit pronounced that "the false marking statute is a criminal one, despite being punishable only with a civil fine." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010) (citing S.Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952)). Thus, as the False Marking Statute is criminal, the Court is bound by *Morrison* and its "sufficient control" analysis, which provides the necessary precedent for examining a statute delegating the authority to prosecute a criminal action.[6] Therefore, the Court must determine whether the *qui tam* provision of the False Marking Statute provides the Executive Branch sufficient control to ensure that the President is able to perform his constitutionally assigned duty to "take Care that the Laws be faithfully executed." Such determination is made in Section IV, *infra*.

The Court does not find either the *Riley* or *Pequignot* district court analysis persuasive. With regard to *Riley*, the Court sees no material difference between bringing a suit "in the name of" as opposed to "as" the United States, as both involve acting on behalf of the United States, and the criminal-civil distinction has been eviscerated by the Federal Circuit's interpretation of the False Marking Statute as criminal. *Pequignot*, 608 F.3d at 1363 (citation omitted).

Along with the civil-criminal distinction, the district court in *Pequignot* relied upon the long history of *qui tam* actions in this country, the government's ability to intervene in

---

[6] The Court's analysis would not change if the False Marking Statute was deemed civil as the Sixth Circuit has applied the *Morrison* "sufficient control" analysis to a civil statute. *United States ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032 (6th Cir. 1994).

False Marking actions under Rule 24 of the Federal Rules of Civil Procedure, and the government's decision to intervene without objecting to the relator's conduct or to the constitutionality of the False Marking *qui tam* provision.  While there has been a long history of *qui tam* actions in this country, history alone is an insufficient justification, particularly when the issue is whether the False Marking Statute's *qui tam* provision is constitutional, not whether all *qui tam* provisions are unconstitutional.  Additionally, unlike in *Pequignot*, the government in this case has not intervened, nor has it filed a brief in support of the constitutionality of the statute.

Finally, the Court does not agree with the district court in *Pequignot* that the government's ability to intervene in an action is sufficiently protected by Rule 24 of the Federal Rules of Civil Procedure.  The Federal Circuit has held that, under Rule 24(a)(2) of the Federal Rules of Civil Procedure, the government has a right to intervene in a False Marking *qui tam* action as a matter of law.  *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010).  The Federal Circuit, however, had previously characterized the False Marking statute as criminal.  *Pequignot*, 608 F.3d at 1363.  It is unclear how a Civil Rule can ever provide the basis for a right to intervene in a criminal proceeding.

Even if it does provide the government the right to intervene, Rule 24 of the Federal Rules of Civil Procedure fails to sufficiently protect the government because it does not require that the government actually be served with a False Marking complaint or any relevant pleadings.  While 35 U.S.C. §290 requires each clerk of a district court to "give notice thereof in writing to the Director [of the United States Patent and Trademark Office]" within one month after the filing of a patent action under Title 35, the only information required to be provided are

the names and addresses of the parties, name of the inventor, and the designating number of the patent at issue.[7] The clerk is not even required to provide the statute under which the cause of action has been brought, and it is the Patent Office, rather than the Department of Justice (which would seek to intervene in a lawsuit), that is notified. This hardly constitutes sufficient notice to the government that a False Marking *qui tam* action has been filed. Moreover, by the time the government is informed by the clerk of an action being filed, the case may have already been settled. This presents a unique problem with False Marking *qui tam* actions because relators are likely to be interested in a quick settlement without the delay and expense of protracted litigation. Thus, without even being notified of the *qui tam* action brought on its own behalf, the government may be bound by a settlement and will likely precluded from bringing its own suit under the doctrine of res judicata. By contrast, the FCA requires the complaint to be served on the Attorney General, allows the government to intervene within 60 days, keeps the complaint sealed while the Attorney General decides whether to intervene, allows the government to take control of the litigation, and requires Department of Justice approval to dismiss the complaint even if the government has not intervened. *See* 31 U.S.C. §3730.

## IV.

Applying the *Morrison* "sufficient control" analysis to the False Marking statute, it is clear the government lacks sufficient control to enable the President to "take Care that the

---

[7]35 U.S.C. §290 states:

The clerks of the courts of the United States, within one month after the filing of an action under this title, shall give notice thereof in writing to the Director, setting forth so far as known the names and addresses of the parties, name of the inventor, and the designating number of the patent upon which the action has been brought. If any other patent is subsequently included in the action he shall give like notice thereof. Within one month after the decision is rendered or a judgment issued the clerk of the court shall give notice thereof to the Director. The Director shall, on receipt of such notices, enter the same in the file of such patent.

Laws be faithfully executed." As discussed, *supra*, unlike the FCA, the False Marking statute lacks any of the statutory controls necessary to pass Article II Take Care Clause muster. The False Marking statute essentially represents a wholesale delegation of criminal law enforcement power to private entities with no control exercised by the Department of Justice. *See Pequignot*, 608 F.3d at 1363 (False Marking statute is criminal). It is unlike any statute in the Federal Code with which this Court is familiar. Any private entity that believes someone is using an expired or invalid patent can file a criminal lawsuit in the name of the United States, without getting approval from or even notifying the Department of Justice. The case can be litigated without any control or oversight by the Department of Justice. The government has no statutory right to intervene nor does it have a right to limit the participation of the relator. The government does not have the right to stay discovery which may interfere with the government's criminal or civil investigations. The government may not dismiss the action. Finally, the relator may settle the case and bind the government without any involvement or approval by the Department of Justice.

There are very practical policy reasons why the Take Care Clause vests federal law enforcement power in the hands of the President, and why delegation of that power to a private entity must be sufficiently controlled by the Attorney General. Prosecutors are granted power not given to private parties, and with that power comes the responsibility to use it to benefit the public welfare, and not some private interest. The doctrine of prosecutorial discretion vests each attorney with the responsibility to determine whether or not a particular enforcement action is fully supported by the law and the facts, and whether it is in the public interest to initiate it. A government attorney must take into consideration the impact of any enforcement

action upon the system as a whole and upon the administration of justice; a private attorney has no such responsibility. There may be situations where there is evidence of a violation but the appropriate course is to forebear from initiating any enforcement action. These responsibilities arise in the criminal arena as well as in the civil arena.

The danger of this uncontrolled privatization of law enforcement is exacerbated by the financial penalties in this statute. The penalty is up to $500 for each article falsely marked. *Forest Group*, 590 U.S. at 1302-1303. Depending upon the number of items, this could be a staggering amount of money or a trivial amount. The statutory penalty is not calibrated to the size or economic strength of the defendant, the significance of the product, or to the degree of competitive harm the false marking may have had beyond simply the gross number of articles falsely marked. *See Id.* at 1303 ("[t]he more articles that are falsely marked the greater the chance the competitors will see the falsely marked article and be deterred from competing"). It is therefore essential that the government have control over when such cases are brought, and most importantly, how they are settled. Such decisions should be made by government attorneys who have no financial stake in the outcome of the litigation or settlement, not by private parties motivated solely by the prospect of financial gain.[8]

**V.**

For the reasons discussed, *supra*, the *qui tam* provision of the False Marking Statute, 35 U.S.C. §292(b) is unconstitutional under the Take Care Clause of the United States

---

[8] The Court's decision on the Take Care Clause renders it unnecessary to address Plaintiff's Appointments Clause argument. The Court notes, however, that the Sixth Circuit's holding that FCA *qui tam* relators are not inferior officers of the United States with "tenure, duration, continuing emolument, or continuous duties" and therefore are not subject to the Appointments Clause would likely apply to False Marking *qui tam* relators. *See Taxpayers Against Fraud*, 41 F.3d at 1041 (citing *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890)).

Constitution, U.S. Const. Art. II, §3.  Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint on the ground that the *qui tam provision* of 35 §U.S.C. 292(b) is unconstitutional (**Doc #: 12**) is hereby **GRANTED**.  Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.  All other motions are denied as moot.

        **IT IS SO ORDERED.**

                                   */s/ Dan A. Polster     February 23, 2011*
                                   **Dan Aaron Polster**
                                   **United States District Judge**