**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNIQUE PRODUCT SOLUTIONS, LTD., | ) | Case No. 5:10-CV-1912 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Dan Aaron Polster |
| | ) | |
| HY-GRADE VALVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION BY THE UNITED STATES OF AMERICA TO INTERVENE AS OF RIGHT AND FOR RECONSIDERATION OF THE COURT'S ORDER OF FEBRUARY 23, 2011.**

Pursuant to 28 U.S.C. § 2403(a) and 28 U.S.C. § 517 and Fed. R. Civ. P. 5.1(c) and 24(a)(2), the Attorney General moves to exercise his right to intervene in this action on behalf of the United States of America (the "government") in order to defend the constitutionality of 35 U.S.C. § 292. Furthermore, the government moves for reconsideration of the Court's Memorandum of Opinion and Order of February 23, 2011, which held the qui tam provision of 35 U.S.C. § 292(b) unconstitutional and dismissed the Plaintiff's Complaint with prejudice. The government requests that the order of dismissal be vacated under Fed. R. Civ. P. 59(e).

**INTRODUCTION**

On August 27, 2010, Unique Product Solutions, Ltd. ("Unique Product"), the qui tam relator in this action, filed a Complaint against the Defendant Hy-Grade Valve, Inc. ("Hy-Grade") alleging false patent marking in violation of 35 U.S.C. § 292. On October 26, 2010, Hy-Grade filed a Motion to Dismiss, claiming lack of personal jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(2), improper venue under 28 U.S.C. § 1404(a), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1]  On November 16, 2010, subsequent to a teleconference with the parties, the Court issued a Minutes Order granting the Plaintiff until January 30, 2011, to conduct limited discovery upon the issue of personal jurisdiction.  Minutes Order, Nov. 16, 2010, ECF No. 9.  Furthermore, the Court ordered that the Defendant file a brief no later than January 10, 2011, "addressing the constitutionality of the federal statute at issue in this case." *Id.*  Finally, the Court ordered that a copy of the Minutes Order "be served upon John Fargo of the United States Department of Justice."[2]  *Id.*  On January 6, 2011, the Court issued an Order granting the Defendant's Motion for an extension of four business days of the deadlines for briefs addressing the constitutionality of the federal statute at issue.  Mot. for Extension, Jan. 6, 2011, ECF No. 11; Order[non-document], Jan. 7, 2011.

On January 13, 2011, the Defendant filed a Motion to Dismiss and Notice of Constitutional Challenge based upon the Appointments and Take Care Clauses of Article II, §§ 2 and 3 of the United States Constitution, which was served on the Attorney General pursuant to Fed. R. Civ. P. 5.1(a)(2) .  Mot. to Dismiss, Jan. 13, 2011, ECF No. 12; Notice of Constitutional Challenge, Jan. 13, 2011, ECF No. 12, Attach. 2.  On February 23, 2011, the Court issued a Memorandum of Opinion and Order, holding the qui tam provision of 35 U.S.C. § 292(b) unconstitutional and dismissing the Plaintiff's Complaint with prejudice. Mem. of Op. & Order

---

[1] The gravamen of Hy-Grade's argument with respect to Fed. R. Civ. P 12(b)(6) was that Unique Product had failed to plead with particularity, as required by Fed. R. Civ. P. 9(b), facts concerning Hy-Grade's alleged intent to deceive.

[2] John J. Fargo is the Director of the Intellectual Property Staff, Commercial Litigation Branch, Civil Division, United States Department of Justice.

15, Feb. 23, 2011, ECF No. 18. The government now moves to exercise its authority to intervene as of right in this case and for reconsideration of the Court's Memorandum of Opinion and Order.

**ARGUMENT**

1. **The Court Did Not Certify the Constitutional Challenge in the November 16, 2010, Minutes Order.**

In a footnote to its Memorandum of Opinion and Order, the Court observed that it certified a constitutional challenge in its November 16, 2010, Minutes Order when it set a briefing schedule on the constitutionality issue and served the Order on the Department of Justice. Mem. of Op. & Order 2 n.2, Feb. 23, 2011, ECF No. 18. The Plaintiff's deadline to respond to the Defendant's brief on the constitutionality issue was originally February 7, 2011, later extended to February 11, 2001, more than sixty days subsequent to the November 16, 2010, Minutes Order. Minutes Order, Nov. 16, 2010, ECF No. 9. The Court asserted that the time for the government to intervene, as prescribed by Fed. R. Civ. P. 5.1(c), had therefore expired because more than sixty days had passed since its November 16, 2010, Minutes Order. Mem. of Op. & Order 2 n.2, Feb. 23, 2011, ECF No. 18. The government respectfully points out that this is incorrect.

    Fed. R. Civ. P. 5.1(a) requires that:

A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:

    (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:

> (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; . . .
>
> and
>
> (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned . . . either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Furthermore, Fed. R. Civ. P. 5.1(b) states that: "The court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." Section 2403(a) of Title 28 of the United States Code states, in relevant part, that:

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Finally, Fed. R. Civ. P. 5.1(c) specifies that:

> Unless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier. Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.

Hy-Grade's October 26, 2010, Motion to Dismiss did not present any challenge to the constitutionality of § 292(b). Mot. to Dismiss, Oct. 26, 2010, ECF No. 6. Moreover, in its November 16, 2010, Minutes Order, the Court did not certify to the Attorney General that the constitutionality of 35 U.S.C. § 292 was questioned. The words "certify" or "certification" do


not appear in the November 16, 2010, Minutes Order. Minutes Order, Nov. 16, 2010, ECF No. 9. On the contrary, the Minutes Order merely set a briefing schedule for the existing parties to address "the constitutionality of the federal statute at issue in this case." *Id.* The Minutes Order did not specify a basis for calling the constitutionality of § 292(b) into question, nor indicate that the Defendant had presented any constitutional challenge to the statute. *Id.* It merely required the submission of briefs to address the issue of the constitutionality of § 292(b). The government had no notice from the Minutes Order that the constitutionality of the statute was actually being challenged, much less the grounds upon which it was being challenged. Significantly, the Court only ordered the Defendant to "address" the constitutionality of the statute, not to challenge it. *Id.* Hy-Grade could have decided, after researching the issue, that a constitutional challenge was not sustainable; in that case, it would not have filed a motion to dismiss challenging the statute. The only information that the Minutes Order provided to the government was notification that the constitutionality of the statute would be addressed by the Defendant by January 10, 2011, assuming the case was not settled or otherwise disposed of prior to that date, and assuming the Defendant concluded that a constitutional challenge was viable.

      Moreover, the Court did not certify to the Attorney General of the United States that the constitutionality of § 292(b) had been questioned, as required by Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403(a). The Court did serve a copy of the November 16, 2010, Minutes Order upon John Fargo of the United States Department of Justice but, as noted above, the briefing schedule set forth in that Order did not set a deadline for the government to file a brief addressing the constitutionality of the federal statute at issue in the case, nor specifically state that the Court was certifying to the Attorney General of the United States pursuant to 28 U.S.C. § 2403(a), that an

Act of Congress affecting the public interest was drawn in question, as explicitly required by Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403(a).  *Id.*  It was not until January 13, 2011, when the Defendant filed its Motion to Dismiss and served notice of its constitutional challenge to 35 U.S.C. § 292(b) upon the Attorney General, that the requirements of Fed. R. Civ. P. 5.1(a) were satisfied and the sixty-day interval in which the government might intervene began to run.  That time limit will not expire until March 14, 2011.  The Court therefore erred in entering its Order holding § 292(b) unconstitutional and dismissing the case prior to that date.  *See* Fed. R. Civ. P. 5.1(c) ("Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.")

  Although the court, in its Memorandum of Opinion and Order, dismissed the case with prejudice, it has not entered a separate final judgment document as required by Fed. R. Civ. P. 58.[3]  The government therefore moves to exercise its right to intervene in this case, under Fed. R. Civ. P. 5.1(c) and 28 U.S.C. § 2403(a), because the statutory sixty-day limitation in which to intervene has not expired and no final judgment pursuant to Fed. R. Civ. P. 58(a) has been entered.

  **2. The Court Should Reconsider Its Ruling that the Qui Tam Provision of 35 U.S.C. § 292(b) is Unconstitutional.**

   A. <u>Actions brought under 35 U.S.C. § 292 are civil actions and the government may intervene as of right at any time in such cases.</u>

  In its Memorandum of Opinion and Order, the Court held that the qui tam provision of 35 U.S.C. § 292(b) is unconstitutional because it violates the "Take Care" Clause of the United States Constitution.  U.S. Const. art. II § 3.  Specifically, the court found that § 292 lacked any of

---

[3] Fed. R. Civ. P. 58(a) requires that, with certain exceptions: "Every judgment and amended judgment must be set out in a separate document . . . ."

the statutory controls "necessary to pass Article II Take Care Clause muster."  Mem. of Op. & Order 13, Feb. 23, 2011, ECF No. 18.  The Court further observed that:

> Any private entity that believes that someone is using an expired or invalid patent can file a criminal lawsuit in the name of the United States, without getting approval from or even notifying the Department of Justice.  The case can be litigated without any control or oversight by the Department of Justice.  The government has no statutory right to intervene nor does it have a right to limit the participation of the relator.  The government does not have the right to stay any discovery which may interfere with the government's criminal or civil investigations.  The government may not dismiss the action.  Finally, the relator may settle the case and bind the government without any involvement or approval by the Department of Justice.

*Id.*  In short, the Court found that, under the "sufficient control" analysis set forth by the United States Supreme Court in *Morrison v. Olson*, 487 U.S. 654, 696 (1988), § 292(b) fatally impairs the government's ability to ensure sufficient control to enable the President to "take Care that the Laws be faithfully executed."  *Id.* 12-13 (quoting U.S. Const. art II, § 3 ).

The Take Care Clause requires the Executive Branch to enforce federal law, and is part of the scheme of separation of powers, by which Congress passes laws, the President enforces them, and the judiciary interprets them.  *See, e.g.*, *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 760 (5th Cir. 2001) (calling the Take Care Clause "a crucial bulwark to the separation of powers").

The separation of powers can be violated in two basic ways.  One involves the "aggrandizement of one branch at the expense of the other," *Buckley v. Valeo*, 424 U.S. 1, 122 (1976), such as when Congress impermissibly retains the power to control the removal of Executive Branch officials.  *See Myers v. United States*, 272 U.S. 52, 176 (1925).  Another occurs when a law, despite no inter-branch aggrandizement, "disrupts the proper balance between the coordinate branches" by "prevent[ing] [one of the branches] from accomplishing its

7

constitutionally assigned functions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977). This latter category has also been described as "impermissibly undermin[ing]" the role of one of the branches. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 856 (1986).

At the heart of the Court's analysis is its characterization of 35 U.S.C. § 292 as a "criminal" statute.  Mem. of Op. & Order 10, Feb. 23, 2011, ECF No. 18 (citing *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed Cir. 2010)). According to the Court: "[t]hus, as the False Marking Statute is criminal, the Court is bound by *Morrison* and its 'sufficient control' analysis, which provides the necessary precedent for examining a statute delegating the authority to prosecute a criminal action." *Id.*

Although the Court relied upon legislative history and Federal Circuit dicta in *Pequignot* to arrive at its conclusion that 35 U.S.C. § 292 is a "criminal" statute, the Court's further description of qui tam actions brought under § 292 as "criminal actions" and a "wholesale delegation of criminal law enforcement power to private entities with no control exercised by the Department of Justice" mischaracterizes the nature of the qui tam actions brought under the statute.  Mem. of Op. & Order 13, Feb. 23, 2011, ECF No. 18.  Such actions may indeed arise under a "criminal statute" but they are civil in form and impose a civil penalty.[4]  As the Federal Circuit has been careful to point out, "a qui tam action is *civil* in form, even though it arises

---

[4] Whether 35 U.S.C. § 292 is indeed a criminal statute is a topic of some controversy. The Federal Circuit has described § 292 as "suppl[ying] a civil fine," *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005), and as a criminal statute, but that actions brought under it are "civil in form." *Pequignot*, 608 F.3d at 1363. Other courts entertaining actions by private parties under § 292(b) have stated that it is not a criminal statute. *See Filmon Process Corp. v. Spell-Right Corp.*, 404 F.2d 1351, 1355 (D.C. Cir.1968); *Sippit Cups, Inc. v. Michael's Creations, Inc.*, 180 F. Supp. 58, 61 (E.D.N.Y. 1960). Finally, the legislative history of § 292 indicates that it was meant to be a criminal statute. *See* S. Rep. No. 82-1979, at 9 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2403 (stating that § 292 is "an ordinary criminal action as well as an informer action.")

8

under a criminal statute." *Pequignot*, 608 F.3d at 1363 (citing 16 James Wm. Moore et al. Moore's Federal Practice – Civil § 107(B)(2)) (emphasis added).

Because qui tam actions are civil in form, they are consequently subject to the Federal Rules of Civil Procedure. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549-50 (1943) (partially superseded by statute on other grounds, Act of Dec. 23, 1943, ch. 377, § 1, 57 Stat. 608); *see also* Federal Procedure, Lawyers Edition § 20:637 (qui tam actions are subject to Federal Rules of Civil Procedure). Therefore, the government *does* have control over the suit, because it may intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) at any stage in the proceedings. *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1328 (2010); *see also Shizzle Pop, LLC v. Wham-O, Inc.*, No. CV 10-3491 PA (FFMx), 2010 WL 3063066, at *3 (C.D. Cal. Aug. 2, 2010). Consequently, the government's right to intervene can protect it from being bound by the actions of the relator, and the effects of the doctrine of res judicata. *Stauffer* at 1329 (citing *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 94 (2d Cir. 2008) ("[T]he United States might become bound by res judicata or collateral estoppel as a result of the actions of a pro se in bringing and losing a qui tam action") (citing *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126-27 (9th Cir. 2007) (" [Q]ui tam relators are not prosecuting only their 'own case' but also representing the United States and binding it to any adverse judgment the relators may obtain")).

The civil form of § 292 actions is further reflected in the requirement that only a preponderance of the evidence (rather than a standard of "clear and convincing evidence" or "beyond a reasonable doubt") is required to establish the "intent to deceive" element necessary under the statute to assign liability for false patent marking. *See Forest Group, Inc. v. Bon Tool*

*Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352-53 (Fed. Cir. 2005)). Furthermore, although the penalty imposed under § 292(a) is punitive in nature, it remains a civil fine, rather than a criminal sanction. *Hess*, 317 U.S. at 549; *Pequignot*, 608 F.3d at 1363. The imposition of punitive fines or damages is not inconsistent with a civil action. *See, e.g.*, *Day v. Woodworth*, 54 U.S. 363 (13 How.) 371 (1851) ("By the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured."); *Smith v. Wade*, 461 U.S. 30, 35 n.3 (1983) (citing cases).

Because actions brought pursuant to 35 U.S.C. § 292 are civil lawsuits in form, and are not criminal prosecutions, they do not cut to the "heart of the Executive's constitutional duty to take care that the laws are faithfully executed." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 755 (5th Cir. 2001). Qui tam relators are merely civil litigants, and are not criminal prosecutors. *Id.* Relators do not conduct or direct criminal investigations and do not seek criminal sanctions from the court; on the contrary, they sue only to recover one-half of a civil penalty.

Furthermore, although the Take Care Clause states that the Executive must "take Care that the Laws be faithfully executed," it does not require Congress to prescribe litigation by the Executive as the exclusive means of enforcing federal law. *Riley*, 252 F.3d at 753; U.S. Const. art. II, § 3. As the Fifth Circuit stated, "even though Congress has historically allowed alternative mechanisms of fraud enforcement against the federal government, this state of affairs does not therefore mean that the Executive's functions to control such litigation are necessarily

impinged." *Riley*, 252 F.3d at 753. Moreover, because the government may intervene as of right to protect its interest in a qui tam suit, the government retains the means to control the action.

Finally, the Intellectual Property Staff of the Department of Justice Commercial Litigation Branch is routinely apprised of § 292 litigation, very often by the relators (including the relator in this case), and routinely reviews settlement agreements in those cases.[5] In those cases in which the settlement does not meet with the approval of the government, the government has the right to intervene, and reserves the right to do so in the future. *See, e.g.*, Statement of Interest 3-4, Jan. 20, 2011, ECF No. 17, *San Francisco Tech., Inc. v. Unilock, Inc.*, Case No. C 10-1656 RS, (N.D. Calif.).

Because an action brought under 35 U.S.C. § 292 is a civil action and is consequently subject to the Federal Rules of Civil Procedure, the government may, as of right, intervene in the case under Fed. R. Civ. P. 24(a)(2). *Stauffer*, 619 F.3d at 1328-29. Therefore, the government retains sufficient authority over the case to satisfy the obligation of the Take Care Clause.

  B. <u>The Morrison analysis applied by the Court is inapposite because a qui tam relator is not an agent or officer of the government, but rather is the assignee of a revocable interest of the United States.</u>

In its Memorandum of Opinion and Order, the Court stated that it did not see a material difference between an action brought "in the name of" the United States, as opposed to an action brought "as" the United States, because both involve a party acting on behalf of the United States. Mem. of Opinion & Order 13, Feb. 23, 2011, ECF No. 18. There is, in fact, a material difference. An individual bringing suit "as" the United States is acting as an officer or agent of

---

[5]*See* http://www.justice.gov/civil/foia/elecread/2010/292%20Payment%20Chart%202010%20 0through%20Dec%2031%202010.pdf (last visited March 2, 2011) for a 2010 Department of Justice list of § 292 cases in which the government has received its portion of either the award or settlement agreement.

11

the United States, directly representing the interests of the United States, whereas an individual bringing suit as a qui tam relator "in the name of" the United States does so only as the assignee of a portion of the interest of the United States. *Pequignot*, 640 F. Supp. 2d at 725 (citing *Riley*, 252 F.3d at 755). *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771-72 (2000) (rejecting the theory that a qui tam relator acts as an agent of the government and holding that the relator has Article III standing as an assignee of the government). A qui tam action therefore represents an implicit, revocable, partial assignment of the government's damages claim to the relator. *Vt. Agency*, 529 U.S. at 773. Thus, a relator bringing an action under 35 U.S.C. § 292 need not bring an action "as" the United States, or even in its name" explicitly, since it is well established that specific terms of art are not required for an assignment of rights. *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993).

In its analysis, the Court relied on *Morrison v. Olson*, 487 U.S. 654 (1988), in support of its conclusion that § 292 is unconstitutional. However, this statue presents a very different situation than *Morrison*, in which the challenged statute authorized the appointment by the Attorney General of an independent prosecutor, functioning as an inferior officer of the government, with "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice, the Attorney General, and any other officer or employee of the Department of Justice." 487 U.S. at 662. Under that statute, the independent counsel could be removed for "good cause" and the Supreme Court therefore held that, given this authority to remove the independent counsel, the statute did not impair the President's constitutional obligation to ensure the faithful execution of the laws under the Take Care Clause. *Id.* at 693.

This case is distinguishable from *Morrison* because the qui tam relator is not an inferior officer of the government, acting "as" the United States. The relator holds no appointment in, and is not responsible to, the government of the United States, other than to surrender one-half of any award or settlement emerging from the case. Neither does he receive any emoluments from the government, nor does he have any continuing duties to perform. Rather, he is an assignee, the holder of a partial interest in the case, assigned by the United States. The relator lacks the discretionary powers of a prosecutor and cannot bring a case seeking criminal sanctions against an alleged offender. Moreover, the government maintains an interest in the case throughout its course. *Stauffer*, 619 F.3d at 1328 (in a § 292 action, the government has an interest in enforcement of its laws and in one-half of the fine). The government may intervene as of right in the case and may revoke the assignment of its interest. *Id.* at 1328-29.

Consequently, the "sufficient control" analysis of *Morrison* is inapposite to actions brought under 35 U.S.C. § 292. Unlike the actions of the independent prosecutor in *Morrison*, a false marking case is not a "law enforcement case" because it lacks all of the legal requisites of a criminal action and can levy no criminal sanction. It is brought by a civil litigant and is subject to the Federal Rules of Civil Procedure. The government can intervene as of right under Fed. R. Civ. P. 24(a)(2) at any time in the case to protect its interest. Section 292, therefore, intrudes itself very little into the Executive's constitutional obligation to see that the laws are faithfully executed and consequently does not offend the Take Care Clause.

      C.    <u>The long history of qui tam actions in Anglo-American jurisprudence weigh heavily in favor of their constitutionality.</u>

Although history may not always be dispositive, the long record of qui tam statutes in this country, dating back to the time of the framing of the Constitution and beyond, requires serious consideration by the Court. Qui tam statutes were enacted by the First Congress, and legislation "passed by the First Congress assembled under the Constitution, many of whose members had taken part in framing that instrument . . . is contemporaneous and weighty evidence of its true meaning." *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 297 (1888), *overruled in part on other grounds by Milwaukee County v. M.E. White Co.*, 296 U.S. 268 (1935). As the district court in *Pequignot* framed the issue: "It is unlikely that the framers would have written a Constitution that outlawed this practice, and then immediately passed several qui tam laws that unconstitutionally encroached on Executive Branch power before the ink on the Constitution was even dry." *Pequignot*, 640 F. Supp. 2d at 726.

Simply put, although now greatly reduced in number, statutes authorizing qui tam actions have been a staple of the American legal system since its inception and have never been found to encroach unconstitutionally upon the Executive's obligation to faithfully execute the laws under the Take Care Clause. Moreover, none of these qui tam statutes, extant or extinct, have included the explicit mechanisms for government intervention that characterize the currently-enacted version of the False Claims Act; indeed, those mechanisms are absent from earlier versions of that Act. *See* 31 U.S.C. § 3730; *Pequignot*, 640 F. Supp. 2d at 723 n.12. This long and successful history of qui tam actions strongly supports a finding of their constitutionality.

14

In summary, qui tam actions are civil actions, subject to the Federal Rules of Civil Procedure, and the government can intervene as of right under Fed. R. Civ. P. 24(a)(2). The qui tam relator is a civil litigant and the holder of a partial, revocable assignment of the government's interest, over which the government may exert control, and is not an officer of the government. Qui tam statutes similar to 35 U.S.C. § 292 have never been found to violate the Take Care Clause of the Constitution.

## CONCLUSION

For the reasons set forth above, the government moves to exercise its right to intervene in this case and requests that the Court reconsider its Memorandum of Opinion and Order and vacate the order of dismissal pursuant to Fed. R. Civ. P. 59(e).

Respectfully submitted,

TONY WEST
Assistant Attorney General

STEVEN M. DETTELBACH
United States Attorney

s/Steven J. Paffilas
Steven J. Paffilas (#0037376)
Adam Hollingsworth (#MA660727)
Assistant United States Attorneys
United States Attorney's Office
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3698
(216) 522-2404 Fax
steven.paffilas@usdoj.gov
adam.hollingsworth@usdoj.gov

JOHN J. FARGO
Director, Intellectual Property Staff

s/John G. New
JOHN G. NEW
Trial Attorney
Intellectual Property Staff
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
E-mail: John.G.New@usdoj.gov
Telephone: (202) 307-0342
Facsimile: (202) 307-0345
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of March, 2011, the foregoing Motion by the United States of America to Intervene as of Right and for Reconsideration of the Court's Order of February 23, 2011, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Steven J. Paffilas
Steven J. Paffilas
Assistant U.S. Attorney